AO 91 (Rev. 11/11)  Criminal Complaint    (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>David Allen Antonio Flemings Jr.<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  3:22-mj-93<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **March 11, 2022** in the county of **Montgomery** in the **Southern** District of **Ohio**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 (g)(1) | Felon in possession of a firearm |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

TFO Fred Zollers, FBI
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**Telephone** *(specify reliable electronic means)*.

Date: 3/18/22

City and state: Dayton, Ohio

Peter B. Silvain, Jr.
United States Magistrate Judge

## AFFIDAVIT

I, Frederick D. Zollers, being duly sworn, does hereby depose and state as follows:

## INTRODUCTION

1. I am a sworn law enforcement officer in the State of Ohio for fifteen (15) years. I am presently a sworn member of the Montgomery County Sheriff's Office. I am currently assigned to the Federal Bureau of Investigation's (FBI) Southern Ohio Safe Streets Task Force (SOSSTF) as a Task Force Officer (TFO), I have received training in drug trafficking investigations and have participated in numerous narcotics-related investigations. I have also conducted numerous investigations related to the use and possession of firearms. Based on my training and experience, I am aware of federal firearm laws and know that possession of a firearm or ammunition by a convicted felon is a violation of Title 18, United States Code, Section 922(g)(1).

## PURPOSE OF AFFIDAVIT

2. This Affidavit is submitted in support of a criminal complaint, and seeks the issuance of an arrest warrant against, David Allen Antonio Flemings Jr. (hereinafter "**FLEMINGS**") for violation of Title 18, U.S.C. § 922(g)(1), that being "felon in possession of a firearm."

3. As part of the investigation, I have, among other things, discussed information with, and/or reviewed documentation and reports provided by, other law enforcement officers. My knowledge of the facts and circumstances set forth in this Affidavit is thus based upon information I have received from other law enforcement officers involved in the investigation.

4. I have elected not to include in this Affidavit all the factual details gathered to date during the investigation, but rather I have included only certain information sufficient to establish probable cause to believe that **FLEMINGS** has committed a violation of Title 18, U.S.C. § 922(g)(1), that being "felon in possession of a firearm."

1

## SUMMARY OF PROBABLE CAUSE

5. Unless otherwise noted, when I assert that a statement was made, I received the information from a law enforcement officer who provided the information to me, either verbally or in a written report. The officer providing me with the information may have received the information by way of personal knowledge or from another source.

6. On Friday, March 11, 2022, at approximately 1:45 a.m. Montgomery County Sheriff's Office (MCSO) Deputy Alec Denker conducted a traffic stop investigation on a Honda Accord driven by **FLEMINGS** in the area of 1934 Needmore Road in Harrison Township, Montgomery County, Ohio. Prior to initiating contact with **FLEMINGS**, Deputy Denker was on routine patrol traveling eastbound on Needmore Road driving a marked MCSO cruiser when he observed a gold Honda Accord traveling westbound on Needmore Road. Deputy Denker observed the driver of the Accord through the front windshield to be a younger black male wearing a black hoodie with white markings. After Deputy Denker's cruiser passed the Accord he observed the Accord immediately brake hard and make an un-signaled left turn into the parking lot of the vacant Kroger located at 1934 Needmore Road. After observing the turn signal violation, Deputy Denker pulled into the Kroger parking lot at the next entrance and quickly located the Accord parked in a parking space at the west end of the Kroger parking lot.

7. Deputy Denker pulled behind the Accord and exited his cruiser to initiate contact with the driver, later identified as **FLEMINGS**. As Deputy Denker approached the Accord, **FLEMINGS** exited the driver's seat of the vehicle. Deputy Denker observed that **FLEMINGS** was wearing a black hoodie with white markings and he recognized **FLEMINGS** as the driver and sole occupant of the car he had observed seconds earlier by his appearance, clothing and build. Deputy Denker

obtained **FLEMINGS** identifiers and advised him why he was being contacted by law enforcement.

8. Deputy Denker learned that **FLEMINGS** did not have a valid driver's license. **FLEMINGS** denied driving the Accord and advised that he had just got in the driver's seat to turn on the heat. **FLEMINGS** said he was waiting on his friend who was at a nearby studio. Deputy Denker noted as he talked to **FLEMINGS**, he remained standing in between the half closed driver's door and front passenger compartment in an apparent manner to block Deputy Denker's view into the driver's compartment.

9. Deputy Denker detected the distinct odor of raw marijuana emitting from the Accord while speaking with **FLEMINGS**. **FLEMINGS** advised he smokes marijuana. Deputy Denker asked **FLEMINGS** if he would grant consent allowing deputies to search the Accord. **FLEMINGS** declined consent to the vehicle being searched. Deputy Denker ordered **FLEMINGS** to exit the Accord so a free air sniff could be conducted. Deputy Denker stood with **FLEMINGS** near the Accord while the free air sniff was conducted. Deputy Matthew McIntosh and his certified State of Ohio Patrol Canine "Riggs" conducted a free air sniff around the Accord resulting in a positive alert.

10. Deputies conducted a probable cause search of the Accord. Prior to searching the Accord, **FLEMINGS** advised deputies that there was marijuana in the trunk of the vehicle. As Deputy Ryan Dalton approached the driver's door of the Accord, **FLEMINGS** had a strong and immediate reaction to Deputy Dalton beginning to search the front driver's compartment. **FLEMINGS** shouted and advised that a few ounces of marijuana were in the back seat and he offered to get the marijuana in a frantic manner. Based on his training and experience, Deputy Denker suspected that **FLEMINGS'** strong reaction and his frantic instructions of where the marijuana was when

3

Deputy Dalton approached the driver's door was an attempt to redirect the deputies' attention to divert detection of an illegal item. Deputy Dalton searched the rear passenger area and located ounce quantities of suspected marijuana in a cooler on the back seat. Deputy Denker detained **FLEMINGS** in the back seat of his cruiser after the marijuana was located.

11. After **FLEMINGS** was detained, deputies continued to search the Accord. Deputy McIntosh located a black semi-automatic handgun in the center console area near the gear shifter between the front seats. The handgun was located in plain view and in the immediate reach of where **FLEMINGS** was seated in the vehicle. The handgun was positioned with the slide and barrel facing toward the engine compartment and the grip was facing toward the driver's seat, indicating the handgun was placed in that position by the driver of the vehicle.

12. Deputy Denker returned to his cruiser to continue his investigation. **FLEMINGS** engaged Deputy Denker in conversation contesting that he was driving the Accord. Deputy Denker conducted a records check on **FLEMINGS** and learned he was on federal supervised release.

13. Before **FLEMINGS** was advised of his *Miranda* rights, Deputy Denker asked **FLEMINGS** if he was allowed to have guns. **FLEMINGS** replied by stating he was not allowed to be around guns and he did not have a gun. Moments later, **FLEMINGS** made a statement along the lines of "the car not even in my name, the car not even on, the gun not even on me." At the time **FLEMINGS** made the aforementioned statement, Deputy Denker had not informed **FLEMINGS** that a handgun was located inside of the Accord.

14. Deputy Denker conducted a post-*Miranda* interview with **FLEMINGS**. In summary, **FLEMINGS** denied possessing and/or knowing the handgun was in the Accord. **FLEMINGS** denied driving the Accord and claimed another male was in the vehicle. Deputy Denker asked **FLEMINGS** if he would consent to submitting a DNA sample for forensic comparison and he

4

declined. **FLEMINGS** was booked into the Montgomery County Jail.

15. Following **FLEMINGS** arrest, I reviewed the investigative reports and listened to recorded calls that **FLEMINGS** made while incarcerated at the Montgomery County Jail. On Friday, March 11, 2022 at approximately 11:36, **FLEMINGS** spoke with an un-identified male regarding his arrest. While speaking about his arrest, **FLEMINGS** made a statement along the lines of "I had that dumbass what's a name, so they saying that dumbass what's a name was in there." Based on training and experience, I know suspects speaking on recorded jail calls will use different words in attempt to speak in code. I believe **FLEMINGS** was referring to the handgun located in the Accord when he said "I had that dumbass what's a name, so they saying that dumbass what's a name was in there."

16. Additionally, I reviewed a recorded call that **FLEMINGS** made on March 12, 2022, at approximately 4:53 p.m. During the recorded call, **FLEMINGS** was speaking with an un-identified male discussing his arrest and potential outcome. During their conversation **FLEMINGS** made a statement along the lines of "I'm not riding with nothing, at all for the rest of my life, unless it's mandatory bro, unless its mandatory bro, and listen, unless it's mandatory right then and there, I swear to God on my kids I'm not riding with nothing, nothing. I don't give a fuck, a bullet, a shell casing anything bro I'm not fucking around."

17. The handgun located in the Accord was a Taurus G3c 9x19 semi-automatic with serial number ACB580409. The handgun was loaded with one 9mm bullet in the chamber and five 9mm bullets in the magazine. An MCSO evidence technician responded to the stop location and collected touch DNA swabs from the handgun for pending forensic comparison.

18. I subsequently spoke with Special Agent (SA) Chris Reed of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who has training and experience in determining the place of

manufacture for firearms and ammunition. SA Reed advised the Taurus handgun was manufactured outside the state of Ohio, thus moved in interstate commerce.

19. Based on a review of **FLEMINGS** criminal history, I know that **FLEMINGS** is currently on supervised released through the Southern District Court of Ohio for violations of Interference with Interstate Commerce by Robbery and Possession with the Intent to Distribute Oxycodone (case number 2:19-CR-55-001).

20. Based on the facts set forth in the Affidavit, there is probable cause to believe that, on or about March 11, 2022, in the Southern District of Ohio, **FLEMINGS** committed a violation of Title 18, U.S.C. § 922(g)(1), that being "felon in possession of a firearm."

Further your Affiant sayeth naught.

                                                Frederick D. Zollers, Task Force Officer
Federal Bureau of Investigation
Southern Ohio Safe Streets Task Force

Subscribed and sworn to before me this  18th  day of March, 2022.

Peter B. Silvain, Jr.
United States Magistrate Judge

6